UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MELINDA KORZENIEWSKI,

                          Plaintiff,                    12-CV-727A(Sr)

v.

NEW YORK STATE DEPARTMENT OF
CORRECTIONS & COMMUNITY
SUPERVISION,

RONALD W. MOSCICKI, and

HILDA ANCELET,

                          Defendants.
_____

## REPORT, RECOMMENDATION AND ORDER

This case was referred to the undersigned by the Hon. Richard J. Arcara, pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions. Dkt. #9.

Plaintiff commenced this action asserting seven causes of action: (1) sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); (2) hostile work environment on the basis of sex in violation of Title VII; (3) retaliation in violation of Title VII; (4) sex discrimination in violation of the New York State Human Rights Law, N.Y. Executive Law § 290 *et seq.* ("NYSHRL"); (5) hostile work environment in violation of the NYSHRL; (6) retaliation in violation of the NYSHRL; and (7) discrimination by Superintendent Moscicki in violation of 42 U.S.C. § 1983. Dkt. #4.

Currently before the Court are defendants' motions to dismiss the complaint in its entirety pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. ##8 & 20. For the following reasons, it is recommended that defendants' motions be granted.

**BACKGROUND**

Plaintiff, a Caucasian female, is an employee of the New York State Department of Corrections & Community Supervision ("NYSDOCCS"), at the Lakeview Shock Incarceration Facility ("Lakeview"), in Brocton, New York. Dkt. #4, ¶¶ 2 & 11. Plaintiff alleges that during the course of her employment, Lakeview Superintendent Ronald Moscicki "made various derogatory comments referencing females." Dkt. #4, ¶ 11. In February of 2010, for example, during an inmate graduation ceremony, Superintendent Moscicki responded to a minor mistake by the female inmates during the course of a drill and ceremony by announcing, "this is why females should not do [drill and ceremony]," and then repeated this opinion twice. Dkt. #4, ¶ 12. In addition, plaintiff alleges that within the period of March 1, 2010 and March 1, 2011, Superintendent Moscicki proclaimed, "I work with a bunch of fucking idiots" as he walked past plaintiff's office and that twice within the period of June 12, 2010 and March 1, 2011, "Superintendent Moscicki walked past the [p]laintiff in the hallway, swung his fist toward the [plaintiff] as they passed and said 'Badda Boom!'" Dkt. #4, ¶ 14.

On or about June 11, 2010, plaintiff and two other female correction counselors[1] filed an internal complaint with NYSDOCCS' Office of Diversity Management regarding Superintendent Moscicki's romantic relationship with Hilda Ancelet,[2] as well as "the derogatory comments and treatment they, all females, had received." Dkt. #4, ¶ 15. Subsequently, plaintiff "heard repeated conversations between Ms. Ancelet, Superintendent Moscicki and other employees regarding the [p]laintiff's internal complaint of discrimination." Dkt. #4, ¶ 16. In addition, plaintiff was informed that her schedule was being changed from 7:00 am to 3:00 pm to 7:30 am to 3:30 pm. Dkt. #4, ¶ 17. Moreover, during the last week of February, 2011, plaintiff's supervisor, Larry Palys, informed plaintiff and another female correction counselor who had complained to the NYSDOCCS' Office of Diversity Management that Superintendent Moscicki had ordered that either the plaintiff or the other correction counselor "take another counselor's caseload"[3] even though a correction counselor with less seniority had volunteered to take over the counselor's caseload. Dkt. #4, ¶ 18.

Plaintiff filed a verified complaint with the New York State Division of Human Rights ("NYSDHR"), on March 17, 2011. Dkt. #4, ¶ 7 & Dkt. #10-1. In her

---

[1] Pamela Allessi and Rebecca Evanoff filed separate lawsuits alleging similar complaints against NYSDOCCS and Superintendent Moscicki. Motions to dismiss are pending before Judge Skretny with respect to Ms. Allessi's lawsuit. 12-CV-725 at Dkt. ##7 & 20. Magistrate Judge Scott has recommended dismissal of Ms. Evanoff's lawsuit by Report and Recommendation to Judge Arcara dated April 11, 2013. 12-CV-726 at Dkt. #27.

[2] The parties stipulated to the dismissal of Hilda Ancelet from this action on February 6, 2013. Dkt. #24.

[3] The NYSDHR's Final Investigation Report indicates that plaintiff reports that "her caseload decreased in October 2010" and notes that "the caseload that was removed from [plaintiff] was given to one of the other complainants, who asserts that she now has the largest caseload of all the guidance counselors." Dkt. #26-2, p.6.

complaint, plaintiff explains that she and Hilda Ancelet are both Correction Counselors and that Superintendent Moscicki and Hilda Ancelet had been involved in a romantic relationship for approximately nine years. Dkt. #10-1, ¶ 2. The complaint was cross filed with the United States Equal Employment Opportunity Commission ("EEOC"). Dkt. #4, ¶ 7. On November 9, 2011, the NYSDHR issued a Final Investigation Report finding probable cause to believe that "Moscicki and Ancelet may be engaged in a romantic relationship, and that relationship may be creating a hostile work environment for [plaintiff] as well as other female employees who are viewed as . . . Moscicki's and Ancelet's 'disfavored' employees." Dkt. #26-2, p.7. However, the NYSDHR's "investigation could not ascertain whether the changes in [plaintiff's] work schedule or caseload were in retaliation for filing an internal discrimination complaint in June 2010." Dkt. #26-2, p.7.

On January 27, 2012, the NYSDHR issued a Determination after Investigation finding probable cause to believe that the NYSDOCCS engaged in unlawful discriminatory practices. Dkt. #4, ¶ 7. Thereafter, the NYSDHR dismissed the complaint for administrative convenience. Dkt. #4, ¶ 7. On May 18, 2012, the EEOC issued a Notice of Suit Rights on May 18, 2012. Dkt. #4, ¶ 7. Plaintiff commenced this action on August 1, 2012 (Dkt. #1), and subsequently amended her complaint as of right. Dkt. #4.

## DISCUSSION AND ANALYSIS

**Jurisdiction**

NYSDOCCS

Defendants argue that the NYSHRL claims must be dismissed for lack of subject matter jurisdiction pursuant to the sovereign immunity afforded by the Eleventh Amendment of the United States Constitution. Dkt. #8, p.17 & Dkt. #20, pp.4-5.

Plaintiff cites *Collins v. New York State Dep't of Corrs. & Comm'y Servs.*, No. 07-CV-493, 2012 WL 2563029 (N.D.N.Y. June 29, 2012), in support of her argument that sovereign immunity does not apply. Dkt. #10, p.13 & Dkt. #26, p.13.

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure when the district court lacks the statutory or constitutional power to adjudicate it. *Markarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). To defeat a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence. *Id.*

As a general rule, state governments and their agencies, such as NYSDOCCS, may not be sued in federal court unless they have waived the sovereign immunity afforded them by the Eleventh Amendment to the United States Constitution or there has been a valid abrogation of that immunity by Congress. *Woods v. Roundout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, (2d Cir. 2006). New York

has not waived its Eleventh Amendment immunity with respect to claims commenced in federal court pursuant to the NYSHRL.  *Widomski v. State Univ. of N.Y. at Orange*, __ F. Supp.2d __, 2013 WL 1155439, at n.16 (S.D.N.Y. Mar. 20, 2013) (collecting cases); *Heba v. N.Y. State Div. of Parole,* 537 F. Supp.2d 457, 471 (E.D.N.Y. 2007); *Jungels v. State Univ. Coll. of N.Y.*, 922 F. Supp. 779, 784 (W.D.N.Y. 1996), *aff'd,* 112 F.3d 504 (2d Cir. 1997).

In *Collins,* in contrast, the district court held that section 297(9) of the New York Executive Law waived sovereign immunity when an NYSDHR complaint is dismissed for administrative convenience.  2012 WL 2563029, at *2.   This section of New York's Human Rights Law provides:

> Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages . . . unless such person had filed a complaint hereunder . . . provided that, where the division has dismissed such complaint on the grounds of administrative convenience, on the grounds of untimeliness, or on the grounds that the election of remedies is annulled, such person shall maintain all rights to bring suit as if no complaint had been filed with the division.

N.Y. Executive Law § 297(9). Rather than effecting a waiver of sovereign immunity, the Court believes that this statute simply places an individual who has received a dismissal of his NYSDHR complaint for the reasons set forth in the statute in the same procedural posture that individual would have been in had that individual not initially chosen to proceed before the NYSDHR. The Court notes that the case cited by the *Collins* court in support of its determination of waiver of sovereign immunity, *Moodie v. Federal Reserve Bank of N.Y.*, 58 F.3d 879, 883-884 (2d Cir. 1995), does not address sovereign immunity, but simply determined that an employee's choice to proceed

before the NYSDHR deprives the federal court of subject matter jurisdiction absent dismissal of the complaint by the NYSDHR. Nothing in *Moodie* suggests that the NYSDHR's determination to dismiss a complaint for administrative convenience can effect a waiver of a state's jurisdictional defense of sovereign immunity. Accordingly, it is recommended that defendants' motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure be granted with respect to the NYSHRL causes of action against NYSDOCCS and Superintendent Moscicki in his official capacity. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (suit against a state official in his official capacity is a suit against the official's office and no different from a suit against the state itself).

Superintendent Moscicki

Superintendent Moscicki argues that Title VII does not permit claims against individual defendants and that Human Rights Law claims against employees in their individual capacities cannot stand. Dkt. #20, pp.4-5.

Plaintiff withdraws her Title VII claim against Superintendent Moscicki in his personal capacity. Dkt. #26, p.7.

As the Court of Appeals for the Second Circuit has held that "individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII," plaintiff's withdrawal of her Title VII claims against Superintendent Moscicki in his individual capacity is appropriate and plaintiff's first, second and third causes of action should be dismissed as to Superintendent Moscicki. *Tomka v. Seiler*

*Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *See Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012) ("Title VII does not impose liability on individuals"); *Mandell v. County of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003) ("under Title VII individual supervisors are not subject to liability"). However, the Court of Appeals for the Second Circuit has interpreted N.Y. Executive Law 296(6) "to mean that an employee may be sued individually if he or she 'actually participates in the conduct giving rise to a discrimination claim.'" *Curto v. Medical World Comm'ns., Inc.,* 388 F. Supp.2d 101, (E.D.N.Y. 2005), *quoting Tomka*, 66 F.3d at 1317. Accordingly, it is recommended that defendants' motion to dismiss plaintiff's Human Rights Law claims against Superintendent Moscicki in his individual capacity for lack of jurisdiction be denied.

**Failure to State a Claim**

Defendants argue that plaintiff has failed to allege sufficiently severe or pervasive discriminatory conduct based upon sex or to identify any adverse employment action under either Title VII or the NYSHRL. Dkt. #8, pp.5-16 & Dkt. #20, pp.5-9.

Plaintiff responds that Superintendent Moscicki "was referring specifically to female employees when he called them a 'bunch of fucking idiots'" and that plaintiff and her coworkers complained about the relationship between Superintendent Moscicki and Ms. Ancelet "*because* their inappropriate sexual relationship, behavior, and conversations had become so severe and pervasive as to make the workplace a hostile environment" and that Superintendent Moscicki responded to the complaint by making

"derogatory statements about those employees for complaining" and making arbitrary changes to plaintiff's workload and schedule. Dkt. #10, p.5. Plaintiff argues that Superintendent Moscicki's derogatory comments and physically threatening gestures were sufficiently severe and pervasive to sustain a claim of discrimination based upon sex and that the changing of her work schedule and increase in her workload is sufficient to plausibly allege adverse employment action. Dkt. #10, pp.7-13.

Standard of Review

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Title VII prohibits discrimination in employment "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "Because New York courts require the same standard of proof for claims brought under the NYSHRL as for those brought under Title VII," the Court's

recommendations pursuant to plaintiff's Title VII claims for sex discrimination, hostile work environment and retaliation apply with equal force to plaintiff's NYSHRL claims. *Leopold v. Baccarat, Inc.*, 174 F.3d 261, 264 n.1 (2d Cir. 1999).

Pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678, *quoting Twombly*, 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Id., quoting Twombly*, 550 U.S. at 555. Thus, a plaintiff need not plead a *prima facie* case of discrimination, but must give the defendant fair notice of plaintiff's claim and the grounds upon which it rests. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002).

Sex discrimination

To establish a prima facie case of sex discrimination under Title VII, a plaintiff must plead facts plausibly suggesting that: (1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). "A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment." *Galabya v.*

*N.Y. City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000). "To be 'materially adverse' a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (internal quotation omitted). "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Id.*

In the instant case, plaintiff has not alleged sufficient facts to plausibly suggest that the change in her work schedule by one half hour or the reassignment of cases among corrections counselors constitutes a materially adverse change in the terms and conditions of her employment. *See Seale v. Madison Cnty.*, __ F. Supp.2d __, 2013 WL 869400, at * 17 (N.D.N.Y. March 7, 2013) ("A change in an employee's schedule, without more, is not an adverse employment action in the context of a discrimination claim) (collecting cases); *Zucco v. Auto Zone, Inc.*, 800 F. Supp.2d 473, 477 (W.D.N.Y. 2011) (dismissing sex discrimination claim where plaintiff failed to allege "that the change in hours caused her any inconvenience, or that she was given fewer hours, less desirable shifts, or that she complained about her work schedule in any way.").

Hostile work environment

Even if an employee does not experience a specific negative action, she may state a claim for a hostile work environment theory by pleading "facts that would

tend to show that the complained of conduct: (1) is objectively severe or pervasive – that is, . . . creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex." *Patane v. Clark*, 508 F.3d 106, 113 (2nd Cir. 2007) (internal quotations omitted). To avoid dismissal pursuant to Rule 12(b)(6), a plaintiff need only plead facts sufficient to support the conclusion that she was faced with harassment of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse. *Id.* Relevant factors include the frequency and severity of the conduct, whether the harassment was physically threatening or humiliating, and whether the harassment interfered with the employee's work performance. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

In the instance case, the conduct complained of, *to wit*, Superintendent Moscicki stating three times at inmate graduation that women should not perform drill and ceremony; once stating "I work with a bunch of fucking idiots" as he walked past plaintiff's office and twice swinging his fist toward plaintiff as they passed while stating, "Badda Boom!", which occurred over the course of thirteen months, is neither objectively severe nor pervasive. *See James v. Federal Reserve Bank of N.Y.*, No. 01-CV-1106, 2005 WL 1889859, at *7-8 (E.D.N.Y. Aug. 8, 2005) (allegations that plaintiff was called a "heifer" and a "slut" on one occasion and was told the "in his country men do not like women like her because they are too strong-headed" insufficient to state claim for hostile work environment); *Prince v. Cablevision Sys. Corp.*, No. 04 Civ. 8151, 2005 WL 1060373, *7-8 (S.D.N.Y. May 6, 2005) (collecting cases where "conduct far

more egregious than that alleged here," *to wit*, management employee's attempt to kiss plaintiff and solicitation of plaintiff for sex, "was insufficient as a matter of law to establish a hostile work environment").

Paramour Preference

Title VII does not encompass disparate treatment caused by a voluntary romantic relationship. *DeCintio v. Westchester Cnty. Med. Ctr.*, 807 F.2d 304 (2d Cir. 1986), *cert. denied*, 484 U.S. 825 (1987); *Schobert v. Illinois Dep't of Transp.,* 304 F.3d 725, 733 (7th Cir. 2002) Title VII does not prevent employers from favoring employees because of personal relationships); *Womack v. Runyon*, 147 F.3d 1298, 1300 (11th Cir. 1998) ("Title VII does not encompass a claim based on favoritism shown to a supervisor's paramour"); *Krasner v. HSH Nordbank AG*, 680 F. Supp.2d 502, 517 (S.D.N.Y. 2010) ("courts - including the Second Circuit – routinely reject discrimination claims based on 'paramour preference.'"). Thus, regardless of whether there is factual support within plaintiff's complaint for her argument that NYSDOCCS "not only permitted an inappropriate sexual relationship between the male harasser and his female subordinate, the supervisor, Superintendent Moscicki, then gave preferential treatment to that female employee, at the expense of female employees who were not having a sexual relationship with the male supervisor," (Dkt. #26, p.11), such allegations cannot support a claim of sex discrimination.

Retaliation

To state a claim for retaliation in violation of Title VII, a plaintiff must plead facts that would tend to show that: (1) she participated in a protected activity known to

the defendant; (2) the defendant took an employment action disadvantaging her; and (3) there exists a causal connection between the protected activity and the adverse action. *Patane*, 508 F.3d at 115. To establish an adverse action in the context of a retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Thus, the anti-retaliation provision is broader than the anti-discrimination provision. *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010). However, the adverse action must be material rather than trivial: "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington*, 548 U.S. at 68.

With respect to plaintiff's allegations regarding her schedule, courts have recognized that

> Without more, changes in work schedule or hours will not satisfy the pleading requirements for a Title VII retaliation claim. Although courts have found a change in work schedule to be sufficiently adverse for purposes of plausibly alleging a retaliation claim, there must be some extenuating circumstance, of which the plaintiff alleges her employer was aware, that transforms such a change from merely inconvenient to materially adverse. *See Lundy v. Town of Brighton*, 732 F. Supp.2d 263, 276 (W.D.N.Y. 2010) (*citing Washington v. Illinois Dep't of Revenue*, 420 F.3d 658, 662 (7th Cir. 2005) (a change in work schedule requiring the mother of a disabled child to arrive at work two hours earlier is materially adverse for her, even though it would not have been for 99 percent of the staff). In *Lundy*, the plaintiff police officer alleged that she was having mental health issues and needed to seek treatment, which prevented her

> from participating in a training mandated by her employer.
> There, the court observed that "[t]hough a simple change in
> work schedule will not ordinarily rise to the level of a
> materially adverse action, when viewed in the context of the
> difficulties that plaintiff was experiencing at the time and the
> other surrounding circumstances, the schedule changes
> could reasonably be found to constitute adverse actions."
> *Lundy*, 732 F. Supp.2d at 276.

*Seale*, 2013 WL 869400, at *19; *See Burlington*, 548 U.S. at 69 ("A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children."). In *Seale*, the district court denied defendants' motion to dismiss plaintiff's retaliation claim where plaintiff alleged that defendants moved her office "to a location where she would no longer have access at all hours and on all days, thereby drastically changing the scheduling flexibility that she had experienced since she was hired. *Id.* In the instant case, in contrast, plaintiff alleges no extenuating circumstances attending the change of her work schedule by one half hour.

With respect to plaintiff's allegations regarding the reassignment of her caseload, the court notes that the Supreme Court has recognized that "reassignment of job duties is not automatically actionable." *Burlington*, 548 U.S. at 69. Thus, in *Kessler v. Westchester County of Social Services*, the Court of Appeals found a question of fact whether a reasonable employee in the position of DSS Assistant Commissioner would be dissuaded from complaining of discrimination if he would be transferred to an office in which "he would not be allowed to perform the broad discretionary and managerial functions of that position, no one would report to him, and he would be forced to do

work normally performed by clerical and lower-level personnel." 461 F.3d 199, 209-210 (2d Cir. 2006). In the instant case, in contrast, plaintiff does not allege that the reassignment of her caseload increased her workload or assigned less desirable or more time intensive cases than she had previously handled or otherwise had any adverse impact upon her workday. As a result, the Court finds plaintiff's allegations are insufficient to plausibly suggest a materially adverse action and recommends that plaintiff's retaliation claim be dismissed.

Section 1983 Claim

Defendant Moscicki argues that because plaintiff's Section 1983 claim depends upon her Title VII claims, her Section 1983 claim must be dismissed. Dkt. #20, p.9.

Plaintiff argues that sex based discrimination may be actionable under section 1983 and that she has satisfied the pleading requirements of such a claim by alleging that Superintendent Moscicki deprived her of her federal right to equal protection while acting under color of state law. Dkt. #26, p.14.

Although claims of discrimination may be actionable against individuals under 42 U.S.C. § 1983 as a violation of equal protection, once the action under color of state law element has been established, the analysis for a section 1983 equal protection claim parallel's that of a Title VII claim. *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004). Accordingly, the Court's recommendation that plaintiff's Title VII

claims be dismissed for failure to state a claim is also fatal to plaintiff's section 1983 claim against Superintendent Moscicki.

## CONCLUSION

Based on the foregoing, it is recommended that defendants' motions to dismiss (Dkt. ##4 & 20), be granted.

Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order. *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  <u>Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.</u>

DATED:   Buffalo, New York
         July 19, 2013

                                            <u>*s/ H. Kenneth Schroeder, Jr.*</u>
                                            H. KENNETH SCHROEDER, JR.
                                            United States Magistrate Judge